UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

CALVIN RAY SANDERS

CRIMINAL ACTION

NO. 15-157-JJB-EWD

**RULING**

This matter is before the Court on a Motion to Suppress (Doc. 15) brought by the defendant, Calvin Sanders. The United States (the "Government") filed an opposition (Doc. 21). The Court conducted a suppression hearing on February 24, 2016. The defendant filed a post-hearing memorandum in support for his motion to suppress (Doc. 27), and the Government filed a post-hearing opposition (Doc. 31). For the reasons stated herein, the defendant's Motion to Suppress (Doc. 15) is **DENIED**.

**I.   BACKGROUND**

During the hearing on the instant motion, this Court heard testimony from several officers who took part in executing the search warrant of the defendant's residence: Detective Seth Sinclair, Baton Rouge Police Department ("BRPD") Narcotics Division; Sergeant Myron Daniels, BRPD Special Response Team ("SRT"); Detective Chris McClure, BRPD Narcotics Division; and Detective Jeffery Pittman, BRPD Narcotics Division. The Court also admitted into evidence the affidavit for search warrant (Gov. Ex. 1A), the search warrant (Gov. Ex. 1B), and the return of search warrant (Gov. Ex. 1C). Based on the evidence presented at the suppression hearing, the Court finds the following facts.

In April of 2015, a confidential informant ("CI") contacted BRPD, alleging that Calvin Sanders ("Sanders" or "the defendant") was selling drugs from his residence. *Suppression Hr'g Tr.* 7:7–13, Doc. 26. BRPD arranged a controlled purchase of illegal narcotics from Sanders'

1

residence and, as a result of that controlled purchase, applied for and received a search warrant for the residence. *Id.* at 13–17. Due to the "defendant's history,[1] firearms' history, [and] ease of which narcotics evidence can be destroyed," BRPD's search warrant affidavit requested issuance of a "no-knock" warrant. *Id.* at 17:17–25. Although the magistrate judge issued the search warrant, the warrant did not contain any language expressly authorizing a no-knock entry.[2] *Id.* at 19:18–23. On the night of April 22, 2015, BRPD officers executed the search warrant on the defendant's residence without first knocking and announcing their presence. *Id.* at 19–20.

Sergeant Myron Daniels ("Sgt. Daniels") testified at the suppression hearing as to his involvement in the search of Sanders' residence. *See id.* at 42–56. Upon entering the residence, Sgt. Daniels—the SRT "shield person"—secured the stairwell, providing cover for the SRT. *Id.* at 44:25–45:13. Sgt. Daniels then loudly announced, "Baton Rouge City Police, Come out with your hands up if you're upstairs," before proceeding up the stairwell. *Id.* at 45:18–22. While advancing up the stairs, Sgt. Daniels observed a person moving in an upstairs bedroom. *Id.* at 47:19–48:5. Once at the top of the stairs, Sgt. Daniels saw bullets falling. *Id.* at 48:21–25. For that reason, and because of the defendant's known violent criminal history, Sgt. Daniels decided to enter the room without waiting for the rest of the team.[3] *Id.* at 48:23–49:1.

---

[1] The defendant's criminal history included firearm violations, narcotics, and resisting. *Suppression Hr'g Tr.* 32:13–14, Doc. 26.

[2] In his original motion to suppress, the defendant argued for suppression of the evidence based on violation of the knock-and-announce rule. *Def.'s Mot. to Suppress*, Doc. 15-1. The defendant's post-hearing brief, however, concedes that a knock-and-announce violation does not lead to suppression of the evidence. *Def.'s Post-Hr'g Mem.* 3, Doc. 27 (stating a desire to preserve the issue for appeal to the appropriate court); *see Hudson v. Michigan*, 547 U.S. 586 (2006). This Court has previously addressed the 19th JDC's practice of issuing no-knock warrants by signing an affidavit requesting such a warrant, but without explicitly providing for a no-knock entry in the search warrant itself. *See United States v. Maloid*, Criminal Action No. 15-108-JJB-RLB, 2016 WL 552358 (M.D. La. Feb. 10, 2016) (stating that "an intrusion into constitutionally protected privacy interests is authorized only to the extent permitted by the search warrant itself, not by reference to the accompanying affidavit"). According to the Government, the 19th JDC has since changed this practice. *Suppression Hr'g Tr.* 28:9–21, Doc. 26. The Court will not address this issue further.

[3] Sgt. Daniels testified that there were two other SRT team members that entered the room at the same time as him. *Id.* at 54:3–7.

Upon entering the bedroom, the defendant began moving towards the closet despite Sgt. Daniels' verbal command to "stop, [and] show his hands." *Id.* at 49:3–5. At this point, Sgt. Daniels used his ballistic shield to knock the defendant onto the bed in an attempt to restrain him. *Id.* at 49:6–8. During the struggle, Sgt. Daniels observed bullets in the bed and believed that the defendant was armed. *Id.* at 49:12–50:1. Sgt. Daniels called for assistance and continued to hold the defendant on the bed while he waited for other officers to arrive. *Id.* at 49:19–20, 50:7–9. According to Sgt. Daniels, all of this occurred in less than 25 seconds from entry of the defendant's residence. *Id.* at 50:20–23.

Detective Chris McClure ("Det. McClure"), one of the SRT team members who accompanied Sgt. Daniels upstairs, also testified at the suppression hearing. *Id.* at 56–64. According to Det. McClure, when he entered the bedroom, the defendant was already on the bed and struggling with Sgt. Daniels and two other officers. *Id.* at 58:25–59:5. While the officers attempted to secure the defendant, Det. McClure noticed that there were "bullets everywhere, all over the bed, loose bullets." *Id.* at 59:9–11. After seeing the bullets, Det. McClure became concerned that there was a weapon on the bed and that the defendant was struggling in an attempt to reach that weapon. *Id.* at 59:14–17. While the struggle was still occurring, Det. McClure yelled "Where is the gun," and the defendant responded that it was in the bathroom trash can. *Id.* at 59:20–24. The defendant was not read his *Miranda* rights prior to making this statement. *Id.* at 60:8–13. After the defendant was secured, Det. McClure located the gun in the bathroom trashcan. *Id.* at 60:2–4.

At some point after the defendant was handcuffed, SRT completed the protective sweep of the defendant's residence. *See id.* at 30:3–7, 60:16–21. The defendant was brought outside, where he was advised of his rights per *Miranda* and indicated that he understood those rights. *Id.* at

3

31:10–24, 32:23–33:2. At this point, the defendant was asked about the gun found in the upstairs trash can; the defendant stated that he purchased the gun from a subject in Baton Rouge. *Id.* at 35:16–18.

In addition to the gun and ammunition, officers discovered Oxycodone and $150. *Id.* at 33:11–12, 22. As a result of these discoveries, Sanders' statements, and the previously conducted controlled purchase, Sanders was charged with possession of a firearm by a convicted felon and possession with intent to distribute oxycodone. *Def.'s Post-Hr'g Mem.* 1, Doc. 27. The defendant filed the present motion, arguing for suppression of the initial statement, as well as the physical evidence discovered during the search and the subsequent statement,[4] because they were made pursuant to a *Miranda* violation. *See id.* The Government responds by asserting that the public safety exception to *Miranda* applies in this case. *See Gov't's Post-Hr'g Mem.*, Doc. 31.

## II.  DISCUSSION

The Fifth Amendment requires that no person "be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Accordingly, "the prosecution may not use statements . . . stemming from custodial interrogation" unless the accused has been informed of and freely waived his Fifth Amendment privileges. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). The Supreme Court has acknowledged a limited exception to *Miranda* for purposes of public safety. *New York v. Quarles*, 467 U.S. 649 (1984). In doing so, the court concluded "that the need for answers to questions in a situation posing a threat to the public safety outweighs the

---

[4] The defendant argues that the gun and subsequent statement admitting possession of the gun are inadmissible as illegal fruits of the first statement made in violation of the defendant's *Miranda* rights. *Def.'s Post-Hr'g Mem.* 5, Doc. 27 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Because the Court finds that the public safety exception applies to the first statement, and therefore, that there was no *Miranda* violation, the Court need not address the fruit of the poisonous tree doctrine.

4

need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657.

In *United States v. Kelley*, the Fifth Circuit affirmed the lower court's application of the public safety exception based on two factors: (1) a concern for officer safety;[5] and (2) an ongoing protective sweep.[6] 268 Fed. Appx. 304 (5th Cir. 2008) (unpublished) ("Because the officer's question was based on his concern about the safety of the officers on the scene and before the officers had completed a protective sweep of the residence, the district court did not err in denying [the defendant's] motion to suppress."). In *Kelley*, law enforcement officers received information from a CI that the defendant was selling drugs out of his residence, and that the defendant had been seen with firearms in his possession. *United States v. Kelley*, Criminal Action No. C-06-782, 2007 WL 704015, *1 (S.D. Tex. Mar. 2, 2007). Due to fear for officer safety, the investigating officer applied for and received a no-knock search warrant for the defendant's residence. *Id.* While executing the search warrant, officers located the defendant close to his bed and observed a "handgun in plain view on the bed, very close to the Defendant." *Id.* The officers arrested the defendant, and immediately thereafter, asked if there were any other weapons in the room or the residence. *Id.* The defendant answered that there were other guns in the bed and the bedroom closet. *Id.* All of this occurred within sixty seconds after the officers entered the home—a security or protective sweep of the residence was still ongoing and the officers had not advised the defendant of his *Miranda* rights. *Id.* at *3.

---

[5] *See also New York v. Quarles*, 467 U.S. 649, 659 n.8 (contrasting the case to *Orozco v. Texas*, 394 U.S. 324 (1969), where pre-*Miranda* questions did not relate to "an objectively reasonable need to *protect the police* or the public from any immediate danger associated with [a] weapon" (emphasis added)); *United States v. Zamora*, No. 2:06CR20089-014, 2009 WL 995032 (W.D. La. Apr. 9, 2009) (holding that the public safety exception did not apply because the government provided no information "to support a conclusion that an objectively reasonable need arose *to protect the officers* from an immediate danger as required by *Quarles*" (emphasis added)).

[6] *See also United States v. Braithwaite*, 458 F.3d 376, 382 n.8 (5th Cir. 2006) (holding that the public safety exception did not apply because the officers conducted and completed two security sweeps of the defendant's residence prior to questioning the defendant regarding additional weapons).

5

In deciding whether the public safety exception applied in *Kelley*, the district court analyzed *Quarles* and several Fifth Circuit cases, ultimately deciding that the facts of *Kelley* were similar to those cases that applied the exception. *See id.* at *2–3. Specifically, the court focused on two important factors: (1) officer safety; and (2) an ongoing protective sweep. *Id.* at *3. First, according to the court, "officer safety was an issue in this case even before the officers entered the Defendant's residence." *Id.* The officers requested a no-knock warrant out of a concern for their safety because the CI said that the defendant was selling drugs out of his residence and was seen with weapons in his possession. *Id.* Furthermore, upon entering the residence, a gun was seen in plain view. *Id.* Second, at the time the defendant was questioned, a protective sweep of the defendant's residence was still ongoing and, therefore, the officers did not know if there was anyone else in the house capable of finding and using those weapons. *Id.* According to the district court, "[g]iven the objective circumstances of the case," the "statement regarding the additional guns is admissible, under the public safety exception to the *Miranda* rule." *Id.*

The facts of the instant case are sufficiently similar to *Kelley* to warrant the same result. Specifically, both factors relied on by the Fifth Circuit—a concern for officer safety and an ongoing protective sweep—are present in this case. First, as in *Kelley*, the evidence indicates that the officers were concerned for their own safety prior to executing the search warrant because they requested a no-knock warrant.[7] The no-knock request was made because of the defendant's prior criminal history, including a history of violence and resisting, as well as the CI's information that the defendant was selling drugs out of his residence. Additionally, once inside the residence, the officers saw bullets falling in and around the defendant, the defendant did not respond to

---

[7] As previously discussed, the Court is not addressing the issue within the 19th JDC of not explicitly including the no-knock language in the warrant itself. For purposes of this ruling, it is sufficient that the officers were concerned enough to request the magistrate to issue a no-knock warrant.

commands, and the defendant struggled with several officers who were attempting to restrain him. The officers' testimony demonstrates that, at the time, the officers believed that the defendant had a gun on or near him and was attempting to access it. Second, a protective sweep of the residence was still ongoing when the officer asked about the location of the gun. The concern during this time was safety, mainly securing the residence and getting the defendant under control. *See Suppression Hr'g Tr.* 55–56, Doc. 26.

Because of the concern for officer safety and the fact that the protective sweep of the residence was not yet completed, the Court holds that the public safety exception to *Miranda* applies. Therefore, the defendant's first statement regarding the location of the gun is admissible, as well as the physical evidence discovered during the search and the defendant's subsequent statement.

### III.   CONCLUSION

For the reasons stated above, the defendant's Motion to Suppress (Doc. 15) is **DENIED.**

Signed in Baton Rouge, Louisiana, on June 16, 2016.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**